UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| KEITH BIXLER, as Special Personal Representative of the Estate of Paula Bixler, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CAUSE NO. 3:16-cv-616-MGG |
| ELKHART OPERATING, LLC, d/b/a Golden Living Center–Elkhart, *et al.*, | ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

On June 2, 2017, Defendant, Elkhart Operating, LLC d/b/a Golden Living Center–Elkhart ("Golden"), filed its Motion to Compel Arbitration and to Stay the Lawsuit Pending Alternative Dispute Resolution Proceedings. Plaintiff, Keith Bixler, as Special Personal Representative of the Estate of Paula Bixler, filed his response in opposition on June 20, 2017. Golden's motion became ripe on June 27, 2017, when Golden filed its reply brief. The undersigned may enter a ruling on this motion based on the parties' consent and 28 U.S.C. § 636(c).

## I. RELEVANT BACKGROUND

On March 26, 2015, Paula Bixler was admitted to Golden for care related to health issues. As part of the admission process, Mrs. Bixler signed and executed an Admission Agreement, the Preamble of which reads:

> This Admission Agreement is a legally binding contract that defines the rights and obligations of each person (or party) who signs it. Please read this Agreement carefully before you sign it. If you have any questions, please discuss them with LivingCenter staff before you sign the Agreement. You are encouraged to have this Agreement reviewed by your attorney, or by any other advisor of your choice, before you sign it.

> If you are able to do so, you must sign this Agreement in order to be admitted to this LivingCenter. If you are not able to sign this Agreement, your Legal Representative, who has been given authority by you to admit you to the LivingCenter, must sign it on your behalf. . . . You are not required to sign any other document as a condition of admission to the LivingCenter.

[DE 28-1 at 3]. In addition, Mrs. Bixler signed and executed a separate Alternative Dispute Resolution Agreement ("ADR Agreement"), which explicitly started with the statement in all caps that "THIS AGREEMENT IS NOT A CONDITION OF ADMISSION TO OR CONTINUED RESIDENCE IN THE FACILITY." [DE 28-2 at 1].

The ADR Agreement begins by identifying Mrs. Bixler as the "Resident" governed by the Agreement and defines the term "Resident" as follows:

> The term "Resident" as used in this Agreement shall refer to the Resident, all persons whose claim is or may be derived through or on behalf of the Resident, including any next of kin, guardian, executor, administrator, legal representative, or heir of the Resident, and any person who has executed this Agreement on the Resident's behalf.

[*Id.*]. As relevant here, the ADR Agreement, which includes a provision incorporating it into the Admission Agreement, required that the parties pursue mediation, or if unsuccessful, binding arbitration to resolve any disputes "arising out of or in any way relating to [the ADR] Agreement or to the Resident's stay at the Facility [*i.e.*, Golden] or the Admissions Agreement between the Parties . . . ." [*Id.* at 1–2]. As defined in the ADR Agreement, disputes subject to the parties' voluntary agreement to participate in ADR

> include but are not limited to all claims in law or equity arising from one Party's failure to satisfy a financial obligation to the other Party; a violation of a right claimed to exist under federal, state, or local law or contractual agreement between the Parties; tort; breach of contract; consumer protection; fraud; misrepresentation; negligence; gross negligence; malpractice; and any alleged departure from any applicable federal, state, or local medical, health care, consumer, or safety standards.

[*Id.* at 2].

While residing at Golden, Mrs. Bixler developed a Stage IV decubitus ulcer, which led to sepsis and ultimately Mrs. Bixler's death on August 26, 2015. On August 11, 2016, Plaintiff, in his capacity as Mrs. Bixler's husband and as Special Representative of her estate, initiated this action with a complaint in Indiana state court alleging wrongful death under Ind. Code § 34-23-1 *et seq.* [DE 5]. In his complaint, Plaintiff specifically alleges that Golden was careless and negligent and breached the applicable standard of care in its treatment of Mrs. Bixler. [*Id.* at 4, ¶¶ 13–14]. Plaintiff further alleges that he suffered injury in the form of lost love, affection, companionship, and services of his wife as a direct and proximate result of Golden's carelessness and negligence. [*Id.*].

On September 16, 2016, Golden removed the case to this Court. On October 3, 2016, Golden filed its answer asserting three affirmative defenses, including lack of subject matter jurisdiction based on the ADR Agreement's arbitration requirement. [DE 7 at 5]. On November 18, 2016, the parties filed their Rule 26(f) Report of Parties' Planning, which made no mention of the arbitration requirement but reported the parties' agreement to a trial before a United States Magistrate Judge and the parties' preference for "use of a settlement conference presided over by a magistrate judge rather than a privately arranged alternative dispute resolution" with a statement that "if the need for privately arranged alternative dispute resolution arises, the parties will so inform the court." [DE 14 at 5, ¶¶ 13–14]. On November 22, 2016, the Court issued its Rule 16(b) Scheduling Order in which it adopted the parties' discovery plan. [DE 18 at 1].

In compliance with the Court's Scheduling Order, Plaintiff filed notice on January 31, 2017, regarding the parties' agreed selection of a mediator with no mention of the ADR

3

Agreement. [DE 21]. In response to a motion to compel production of discovery responses, Golden filed a notice on April 28, 2017, informing the Court of its compliance with the discovery requests at issue in Plaintiff's motion to compel, but again with no mention of the ADR Agreement. [DE 23]. Accordingly, the Court denied Plaintiff's motion to compel as moot on May 4, 2017, and awarded Rule 37 expenses to Plaintiff. [DE 24]. Golden timely filed its objection to Plaintiff's bill of costs on May 25, 2017, with no mention of the ADR Agreement. [DE 26]. On June 2, 2017, before the Court confirmed Plaintiff's bill of costs, Golden filed the instant motion to compel arbitration based upon the ADR Agreement. [DE 27].

Through the instant motion, Golden argues that Plaintiff's wrongful death claim is within the scope of the ADR Agreement such that arbitration should be compelled in keeping with federal and Indiana policies favoring enforcement of alternative dispute resolution agreements. More particularly, Golden contends that Plaintiff's wrongful death claim derives from alleged negligent conduct covered by the ADR Agreement. In opposition, Plaintiff argues that Indiana's wrongful death statute establishes an independent cause of action unique to survivors and that he cannot be bound by the ADR Agreement because he did not sign it.

## II.  ANALYSIS

"To compel arbitration, a party need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). Here, there is no dispute that Plaintiff is refusing to proceed to arbitration. The parties disagree, however, as to whether the ADR Agreement is valid and enforceable as between Plaintiff and Golden and if it is valid and enforceable as to Plaintiff, whether his wrongful death

4

claim falls within the Agreement's scope of covered disputes.

### A. Agreement to Arbitrate

Indiana and federal courts favor enforcement of valid arbitration provisions even in long-term care settings. *Tender Loving Care Mgmt., Inc. v. Sherls*, 14 N.E.3d 67, 71 (Ind. Ct. App. 2014). Further, Indiana courts construing arbitration agreements resolve doubts in favor of arbitration. *Nightingale Home Healthcare, Inc. v. Helmuth*, 15 N.E.3d 1080, 1085 (Ind. Ct. App. 2014); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). In considering whether parties agreed to arbitrate a particular matter, courts apply "ordinary state-law principles that govern the formation of contracts." *Druco Rests., Inc. v. Steak N Shake Enters.*, 765 F.3d 776, 781 (7th Cir. 2014). As a matter of contract law, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs. V. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). In addition, a "party seeking to compel arbitration has the burden of demonstrating the existence of an enforceable arbitration agreement." *Sanford v. Castleton Health Care Ctr., LLC*, 813 N.E.2d 411, 416 (Ind. Ct. App. 2004).

Here, the critical question is whether under Indiana contract principles, the ADR Agreement requires Plaintiff to arbitrate his wrongful death claim. There is no dispute that the ADR Agreement constituted a valid and enforceable contract between Mrs. Bixler and Golden. Moreover, the parties agree that Plaintiff never signed the ADR Agreement. However, the parties dispute whether the ADR Agreement extends to Plaintiff.

To support its conclusion that the ADR Agreement extends to Plaintiff, Golden cites the ADR Agreement's definition of the word "Resident," which includes "all persons whose claim is

or may be derived through or on behalf of the Resident, including any next of kin, guardian, executor, administrator, legal representative, or heir of the Resident, and any person who has executed this Agreement on the Resident's behalf." [DE 34 at 4 (citing DE 28-2 at 1)]. Relying on the plain language of this contractual definition, Golden contends that the reference to "next of kin" or "heirs" is enough to bind Plaintiff to arbitration based on the ADR Agreement because his wrongful death claim "derive[s] through or on behalf of the Resident," Mrs. Bixler.

In addition, Golden cites *Sanford* in support of compelling arbitration. What Golden fails to acknowledge, however, is that the court in *Sanford* compelled arbitration based on a contract with a long-term care facility because the wrongful death claim raised by the personal representative of a decedent's estate "arose out of or related to the [c]ontract or any tort claim . . . ." 813 N.E.2d at 422. In analyzing Indiana's wrongful death statute, the court in *Fisk v. United States* similarly concluded that such claims "derive[] from the tortious act and not from the person of the deceased." 657 F.2d 167, 170 (7th Cir. 1981) (quoting *In re Estate of Pickens*, 263 N.E.2d 151, 156 (Ind. 1970)). As the court in *Fisk* explained, "[t]he purpose of the [Indiana wrongful death] statute is not to compensate for the injury to the decedent, but rather to create a cause of action to provide a means by which the decedent's survivors may be compensated for the loss they have sustained by reason of the death." *Id.*

Therefore, Golden's argument that Plaintiff's wrongful death claim "derive[s] through or on behalf of" Mrs. Bixler is misplaced despite his status as her next of kin or heir. Nevertheless, *Sanford* is instructive in this case. In *Sanford*, the court compelled arbitration based on an arbitration clause included in the relevant long-term care contract, which required its parties to arbitrate any disputes arising from tort claims. *Sanford*, 803 N.E.2d at 414–15, 422. The key,

6

however, was that the wrongful death plaintiff had also signed the relevant contract. Here, Plaintiff did not sign the ADR Agreement.[1] Plaintiff may be bound to the ADR Agreement if he were prosecuting a negligence claims raised for the benefit of Mrs. Bixler through her estate. *See Sanford*, 813 N.E.2d at 421 (finding claims under Indiana's survival statute, Ind. Code § 34-9-3-1, subject to the relevant contract and arbitration clause). But he is not raising such a survival claim. Instead, Plaintiff's wrongful death claim has brought a statutory wrongful death claim based upon his own injury, even though the same negligence is an element of his claim. *See* Ind. Code § 34-23-1-1 (Indiana's wrongful death statute).

Therefore, Golden has not met its burden to show that Plaintiff and Golden had an agreement to any statutory arbitrate statutory wrongful death claim Plaintiff may raise. Without this element, Golden has not demonstrated that this Court should compel arbitration based on the ADR Agreement. In addition, Golden likely waived any right to arbitrate that may have existed because of the ADR Agreement.

B. **Waiver of Right to Arbitrate**

"Contractual rights can be waived." *Cooper v. Asset Acceptance, LLC*, 532 F. App'x 639, 640 (7th Cir. 2013) (citing *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co., Inc.*, 969 F.2d 585, 587 (7th Cir. 1992)). "Waiver can either be express or inferred." *St. Mary's Med. Ctr.*, 969 F.2d at 587. "Waiver is a question of fact under the circumstances of each case." *Safety Nat'l Casualty Co. v. Cinergy Corp.*, 829 N.E.2d 986, 1004 (Ind. Ct. App.

---

[1] Golden also relies upon *Maynard v. Golden Living*, 56 N.E.3d 1232 (Ind. Ct. App. 2016) in which the court affirmed the trial court's decision to compel arbitration based on an arbitration agreement, almost identical to the ADR Agreement at issue in this case even though the wrongful death plaintiff had not signed the arbitration agreement. However, the facts in *Maynard* distinguish it from this case. The plaintiff in *Maynard* had signed the separate Admission Agreement and the court's analysis of extrinsic evidence caused it to conclude the arbitration agreement was enforceable against the plaintiff. Here, Plaintiff signed no agreement with Golden dictating a

2005) (citing *MPACT Constr. Group, LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 910 (Ind. 2004)).

When determining whether a party has waived its contractual right to arbitrate, the court must ascertain whether "considering the totality of the circumstances, a party acted inconsistently with the right to arbitrate." *Cooper*, 532 F. App'x at 641 (citing *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.,* 660 F.3d 988, 994 (7th Cir.2011)). Courts "focus on several factors when making this determination, including whether the party attempting to invoke its right to arbitrate acted diligently in doing so, whether the invoking party participated in litigation, substantially delayed its request for arbitration, or participated in discovery." *Id.* Also important is "the degree of prejudice that would be suffered by the party against whom arbitration has been invoked." *Id.* (citing *St. Mary's Med. Ctr.,* 969 F.2d at 590)). Additionally, "when a party chooses to proceed in a judicial forum, there is a rebuttable presumption that the party has waived its right to arbitrate." *Kawasaki,* 660 F.3d at 995.

Here, the docket exposes Golden's waiver. Golden clearly raised the ADR Agreement as an affirmative defense in its answer, its first substantive filing in this case. After that, however, Golden's filings are silent as to the ADR Agreement—and arbitration generally—for eight months until it filed the instant motion. Golden's subsequent conduct also demonstrates its intent to resolve this action through litigation rather than arbitration. Golden consented to trial. [DE 14 at 5, ¶ 13]. Golden expressed preference for judicial settlement conference over other forms of alternative dispute resolution. [*Id.* at 5, ¶ 14]. Golden provided responses to Plaintiff's discovery requests without any mention of arbitration. None of Golden's filings before now even

---

different contractual analysis.

hint that it planned to invoke the ADR Agreement. Moreover, Golden could have filed this motion to compel arbitration much sooner. If arbitration were compelled, costs would have been reduced for the parties and the Court's judicial resources would have been conserved. Golden did not.

As such, the record of litigation in this case shows that Golden chose to proceed in this judicial forum rather enforce any arbitration rights that may have existed under the ADR Agreement. In other words, Golden acted inconsistently with its alleged right to arbitrate. *See St. Mary's Med. Ctr.*, 969 F.2d at 588; s*ee also, Safety Nat'l Casualty Co v. Cinergy Corp.,* 829 N.E.2d 986 (Ind.App.2005) (arbitration clause waived by party's dilatory conduct before requesting arbitration). Through its own litigation conduct, Golden waived any right to arbitrate Plaintiff's wrongful death claim that may have existed as the result of the ADR Agreement.

### III. CONCLUSION

For the reasons stated above, the Court finds that no agreement to arbitrate exists between Plaintiff and Golden as the result of the ADR Agreement. Moreover, Golden waived any right to arbitrate that may have existed. Therefore the Court **DENIES** Golden's motion to compel arbitration. [DE 27].

**SO ORDERED.**

Dated this 12th day of July 2017.

                                                    s/Michael G. Gotsch, Sr.
                                                    Michael G. Gotsch, Sr.
                                                    United States Magistrate Judge